P. and G. LORILLARD v. PALMER and others, 16 J. R. 348.

PALMER v. LORILLARD, 15 J. R. 14.

### Ships and Freight; Blockade.

THIS was an action of assumpsit for the non delivery of a quantity of tobacco, shipped on board a schooner lying in the port of Richmond, Va., in January, 1813, by the plaintiff's agent. About the 27th of the same month, the vessel sailed for New York, and on the 2d of February, the master came to anchor in Hampton Roads, for the purpose of ascertaining whether he could safely proceed to sea; there being at that time a British squadron blockading the Chesapeake, through which the vessel ·must necessarily pass. When he had ascertained the impossibility of getting to sea without being captured, and the danger of remaining in Hampton Roads, by the advice of Captain Stewart of the U. S. navy, commanding at that station, he put into Norfolk and there remained until about the 7th of March, when on account of the increase of the British squadron, it was deemed unsafe to remain at Norfolk, and he returned with the vessel to Richmond, where she arrived on the 15th of that month. She continued there until the 21st of September, when in consequence of a violent storm and freshet in the river, she was sunk at the wharf, without any fault or negligence of the defendants or their agents, and the tobacco in question was wholly spoiled and ruined. At the time the bill of lading was signed, it was not known at Richmond that the Chesapeake was blockaded, nor was it known by the master or the defendant; and in fact the blockade did not then exist; but it continued without intermission, from the time the vessel attempted to sail on her voyage, until after she was lost. On

the 16th of September, after her return to Richmond, the agent of the plaintiffs demanded the tobacco of the master for the purpose of forwarding it to New York by land, and he refused to deliver it, unless on being paid half-freight. Verdict for the plaintiffs for the invoice price of the tobacco, with interest, subject to the opinion of the court; on the motion for a new trial, Thompson, Ch. J., delivered the opinion of the court. He said:

"The only question in the case is, whether the master was bound to comply with the demand, without receiving the half freight claimed.

"I know of no principle of law on which half freight could be claimed. The defendant had a right to demand full freight or none at all. But I think no freight could be claimed. Although the right to freight commences on the loading of the goods, it is a defeasible right, depending on the success of the voyage; and in case no part of the *iter* is performed to any beneficial purpose, no freight is earned. (3 J. C. 97.) If the ship owner is determined to have his freight, he must forward the goods. It is upon the delivery of the cargo that the right to freight depends, unless such delivery is waived, and some new contract is made respecting it. If the ship owner will not or can not carry on the cargo, the freighter is entitled to receive his goods again without paying any freight. (*Hunter* v. *Prinsep*, 10 East. 393.) "It is well settled that by the blockade of the port of discharge, a charter party is dissolved, and all claim to freight under it gone. (*Scott* v. *Libby and others*, 2 J. R. 336.) "The effect of the blockade upon the bill of lading is very much the same as upon a charter party. "If an action of trover could have been sustained for the tobacco without paying the freight, it must follow as a matter of course that the defendants are responsible for the loss; because they were in default in not delivering the tobacco when demanded." Judgment for plaintiff. On writ of error brought,

The Court of Errors held that the contract of affreightment was not dissolved by the hostile blockade of the port of departure; the performance of it is merely suspended; and the ship owner or master may detain the goods, until he

can prosecute his voyage with safety, or the freighter may demand his goods on tendering the freight.

The court held further that it is only when the voyage is broken up on the part of the ship owner or master, or the completion of it becomes unlawful, that the contract is dissolved.

But the court also held, that as the special verdict found "that the vessel was sunk and the cargo lost, and without any default of the defendants or their agents, the goods were wholly spoiled and lost," that if the plaintiffs had a cause of action they could not recover in that form of action, as the jury, by their special verdict had negatived the *gravamen* alleged, to wit, the negligence of the defendants; and that the Court of Errors could not look to any other facts, than those found by the jury. But the plaintiffs had no cause of action, since the contract was not dissolved, and the defendant had a right to retain the goods until he could proceed on his voyage, or the plaintiffs tendered the freight or the contract was rescinded by mutual agreement.

See as to *S. P. Ogden* v. *Barker*, 18 J. R. 87, where Spencer, Ch. J., says "The leading facts in this case are so entirely like those in *Palmer* v. *Lorillard*, that there is no distinguishing the two cases. To that decision we are bound to submit."

In *Stoughton* v. *Rappalo*, 3 Serg. and Rawle, 559, this question as to the effect of a blockade in dissolving a contract of charter party is raised. Tilghman, Chief Justice says it is a difficult question, but that it was not necessary to decide it in that case, and the court gave no opinion upon it.

———

☞ In the case of *Palmer* v. *Lorillard*, on the question as to the form of action; that it should have been trover and not assumpsit, so as to sustain a judgment on the facts found by special verdict, Chancellor Kent, who delivered the opinion of the court says: "How this point came to be omitted in the Supreme Court, I do not know. The question before us arises upon the special verdict in which we can not avoid comparing the verdict with the declaration. Nor do I think that this case comes within the rule that an objection not

taken in the court below, can not be taken here. That rule was only intended to be applied to objections that the party may be deemed by his silence to have waived, and which when waived, still leave the merits of the case to rest with the judgment. But if the foundation of the action has manifestly failed, we can not, without shocking the common sense of justice, allow the recovery to stand."

The judgment was unanimously *reversed.*

The reporter adds this note: "Though the whole court were for the reversal, yet a few of the members confined their opinion to the first point; (as to the finding of *no negligence* by the special verdict;) A great majority however concurred with the Chancellor generally, that the judgment ought to be reversed on both points."